# A F F I D A V I T  5:06 MJ 5134

I, Mark McMurtry, Special Agent of the Federal Bureau of Investigation (FBI), hereinafter referred to as the Affiant, being duly sworn, state that:

1. Your Affiant is an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, as a Special Agent of the FBI. As such, your Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. Affiant has been employed by the FBI for the past eleven (11) years. Your Affiant has spent the past five and a half years assigned to the FBI's Cleveland Division, Canton Resident Agency. For the majority of his employment with the FBI, your Affiant has been assigned responsibilities to investigate Federal crimes involving narcotics, money laundering, violent crime, fugitives, and general criminal matters. In addition to being assigned to the Canton Resident Agency of the FBI your Affiant has been assigned to the Stark County, Ohio Violent Crimes/Fugitive Task Force as the Unit Coordinator. At all times during the investigation described in this affidavit, your Affiant has been acting in an official capacity as a Special Agent of the FBI.

2. Since July of 2001, Affiant has participated in numerous narcotics investigations which have identified MICHAEL

1

MILLER as being involved in money laundering activities in the Canton, Ohio Area. As a result of your Affiant's participation in this investigation, and reports to the Affiant by other SAs of FBI, other federal and state law enforcement officers, reliable confidential sources and witnesses, your Affiant is familiar with the facts and circumstances described in this affidavit.

3. Affiant alleges the facts and circumstances contained in this affidavit show probable cause that PAUL MONEA, MICHAEL D. MILLER, and others have committed and are currently committing offenses involving violations of Title 18, United States Code, Sections 1956 (a)(3); and (h) (Laundering Monetary Instruments and Conspiracy).

4. Affiant submits this affidavit in support of criminal complaints charging PAUL MONEA and MICHAEL D. MILLER with Conspiracy to Launder Monetary instruments in that they from at least as early October 15, 2006, and continuing until the present, in the Northern District of Ohio, Eastern Division, and elsewhere, along with others known and unknown, did knowingly and intentionally combine, conspire, confederate, and agree together and with diverse other persons, both known and unknown, to knowingly and intentionally conduct and attempt to conduct a series of financial transactions affecting interstate commerce, which transactions involved the proceeds and/or represented proceeds of a specified unlawful activity; that is, conspiracy to distribute controlled substances, in violation of Title 21,

United States Code, Section 846, possession of controlled substances with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 841, knowing that the transaction involved the proceeds of some form of unlawful activity; and knowing that the transactions were designed in whole or in part to conceal the nature, location, source, ownership or the control of the proceeds of said unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(I);

all in violation of Title 18, United States Code, section 1956(h).

## BASIS OF INFORMATION

5. Except as otherwise noted, the information set forth in this affidavit has been provided to your Affiant by FBI Agents, Officers of the FBI Violent Crime Task force, members of the Metro Unit, the Canton, Ohio Police Department, or other law enforcement agents or officers. Unless otherwise noted, whenever in this affidavit, Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, information resulting from physical surveillance, except where otherwise indicated, does not necessarily set forth Affiant's observations, but rather has been provided directly or indirectly through members of the Metro

3

Unit, the Canton, Ohio Police Department, the Alliance, Ohio Police Department, or other law enforcement officers who conducted such surveillance. Any information pertaining to vehicles and/or registrations, personal data on subjects or record checks has been obtained through the Law Enforcement Automated Data System (LEADS) from the State of Ohio or the National Crime Information Center (NCIC) computers by members herein described.

6. Since this Affidavit is being submitted for the limited purpose of securing criminal complaints and arrest warrants, your Affiant has not included each and every fact known to him concerning the investigation. Affiant has only set forth the facts he believes are necessary to establish the foundation for the requested criminal complaints and arrest warrants.

**BACKGROUND**

7. In July of 2003, the FBI and the Stark County, Ohio Violent Crimes Task Force joined with the Internal Revenue Service, and other local law enforcement agencies in initiating an investigation into the money laundering activities of subjects in the Stark County, Ohio area. This investigation led to the introduction of an FBI undercover agent to PAUL MONEA by MICHAEL D. MILLER. That introduction occurred on March 30, 2006. Since that introduction Affiant and other investigators have developed evidence which establishes probable cause to believe that these subjects have and continue to violate Title 18 United States

4

Code, Sections 1956(a)(3) and (h), that is Conspiracy to Launder Monetary Instruments:

### SUBJECTS

| | |
|---|---|
| Name: | MICHAEL D. MILLER |
| DOB: | 1/XX/40 |
| SSN: | XXX-XX-5429 |
| Address: | ███████████, Jackson Twp., Ohio |
| Height: | 6'2" |
| Weight: | 165 lbs. |
| Alias: | Mickey |

| | |
|---|---|
| Name: | PAUL MONEA |
| DOB: | 9/XX/46 |
| SSN: | XXX-XX-6511 |
| Address: | ███████████, Alliance, Ohio |
| Height: | 5'10" |
| Weight: | 185 lbs. |

## MONEY LAUNDERING ACTIVITY BY MICHAEL MILLER

### PROBABLE CAUSE: BACKGROUND

8. On April 2, 2004, an FBI Undercover Agent, utilizing the name John Rizzo, hereafter referred to as UCE 3124 was introduced to MILLER by a source.

9. On March 30, 2006 MILLER introduced UCE 3124 to PAUL MONEA. MILLER, MONEA, UCE 3124 and DAVE LNU traveled to the former estate of Mike Tyson at 3737 State Route 534 Southington, Ohio. MONEA explained that he had purchased the estate prior to being sent to Federal Prison for charges stemming from an IRS investigation. MONEA advised that the estate was in the name of a trust created by MONEA. MONEA and UCE 3124 discussed the

5

possibility of UCE 3124 investing money with MONEA. UCE 3124 asked, "How much problems you think are gonna be generated by the cash?" MONEA stated, "From you?" UCE replied "Yeah" and MONEA stated, "I gotta think about that one overnight." Later in the conversation MONEA asked, "Let me ask you another question. You're looking for things that you can put cash money into....that I don't wanna use the word legitimize. What's the word I'm looking for." UCE 3124 stated, "I don't like that word (laughs)." MONEA replied, "That gives you uh...interests in legitimate businesses that you can generate a cash flow from so that you have a return on your capital." UCE 3124 advised MONEA that he wants to be able to pay taxes and MONEA inquired regarding the amount of money that UCE 3124 would be willing to invest. The two agreed to stay in contact and continue to engage in general conversation.

10. On October 17, 2006, UCE 3124 met with MICHAEL MILLER and PAUL MONEA at <u>MICKEY MILLER CHEVROLET at 869 Broad Street, Wadsworth, Ohio</u>. UCE 3124 was wearing a recording device that was operational during the meeting. The three traveled to lunch during which MONEA showed UCE 3124 what he represented to be a 43 karat diamond that MONEA was attempting to sell. MONEA, who had spoke to UCE 3124 about the diamond during a previous meeting, advised UCE 3124 that he would provide a commission to UCE 3124 if UCE 3124 could find a buyer for the diamond. UCE 3214 advised that since the last time UCE 3124 had seen MONEA he had talked to

6

a possible buyer for the diamond. UCE 3124 expressed his concern regarding the possible transaction and informed MONEA and MILLER that it was to be regarded as a serious nature and if MONEA tried to pull a fast one on the UCE 3124's associate both UCE 3124 and MONEA would end up dead.

11. Once MONEA departed UCE 3124 and MILLER continued to discuss their business opportunities. After discussing their business dealings, UCE 3124 and MILLER again discussed the possible diamond transaction with PAUL MONEA. MILLER assured UCE 3124 that the diamond was legitimate and advised that MILLER was the trustee of MONEA's trust. The two continued to discuss the diamond before UCE 3124 departed.

12. On October 23, 2006, UCE 3124 telephoned PAUL MONEA at 330-495-3701. The telephone conversation was recorded. UCE 3124 advised MONEA that UCE 3124's friend was interested in the diamond that MONEA's was attempting to sell. UCE 3124 and MONEA discussed the possibility of UCE 3124's buyer seeing the diamond during the first week in November while MONEA would be in Las Vegas, Nevada.

13. On November 2, 2006, UCE 3124 met PAUL MONEA and Scott Last Name Unknown (LNU) at the Silverton Hotel in Las Vegas, Nevada. UCE 3124 was wearing a recording device that was operational during the meeting. The three traveled in UCE 3124's vehicle from the Silverton to the Venetian Hotel to meet UCE 3124's associate, UCE 3247, who was posing as the individual

7

interested in purchasing the 43 karat diamond from PAUL MONEA. While traveling in the car. UCE 3124 asked if he could speak in front of Scott LNU and MONEA replied affirmatively. UCE 3124 stated, "I'm just concerned, these guys...I make a lot of money with these guys, okay, a ton." UCE 3124 continued, "I don't wanna propose that I put you with them and everything goes well and then you have second thoughts after I vouch for you and committed." MONEA replied, "I understand how that works." MONEA expressed concern regarding accepting a cash payment for the diamond and stated, "They can give me a bigger boat, they can throw in an airplane they want to get rid of and buy a bigger one. And that's a way for the them to turn their liquid assets into hard assets." UCE 3124 replied, "But they still gotta use money to do that." MONEA stated, "Yeah, but they would use their cash someplace else." MONEA advised "In another country they can buy planes for cash and I don't think anyone would ask questions." MONEA advised, "My situation is special, because I have to assume that everything that I do is looked at." (Law enforcement is watching MONEA's activity). UCE 3124 responded, "Yeah, and I told him about that. That was a little bit of his concern. I'm really gonna be up front with you. I make a lot of money with these guys. They don't sell coffee beans." MONEA stated, "I don't wanna know." UCE 3124 informed, "Well you gotta know because you gotta know how these guys..." MONEA interrupted, "Tobacco or something. They sell stuff in

8

commodity." UCE 3124 stated, "They're drug dealers." MONEA replied, "Now why did you have to make a point to tell me that?" UCE 3124 stated, "Because I've got to tell you that because you have to know their mind set. They are businessmen, but that's their business. They won't...they are going to be up front with you because they want you to be one-hundred percent comfortable with what's going on. Now they won't ever bring it up again." Following a telephone call that MONEA received, UCE 3124 continued, "Have in you mind the kind of people they are. Very honorable, very honorable people." MONEA then explained how in the past he had to deal with the "mob" and found them to be very honorable. UCE 3124 explained, "I don't want to lie to you. I want everything on the table?" MONEA stated, "As long as the money is coming from somewhere legal." UCE 3124 responded, "It's coming from wherever it comes from and you guys deal with that." UCE 3124, MONEA, and Scott LNU then discussed the diamond deal before MONEA explained, "Drug dealers are businessmen, but drug dealers also have other businesses that are legitimate businesses. So I'm selling this to a businessman. Okay and he is paying me with legitimate money." Following more discussion MONEA exclaimed, "Hey Scott, you know how I am deaf in my left ear and my hearing aid battery comes and goes." Scott LNU replied, "Yeah." Following a brief phone call MONEA continues, "So anyhow Scott the point is, I don't have a problem doing any

9

business with rug dealers, do you?" Scott Lnu replied, "Rug dealers? No I love rug dealers."

14. UCE 3124, PAUL MONEA, and Scott LNU then arrived at the Venetian Hotel and Casino and met UCE 3247 in UCE 3247's room. The four individuals engaged in general conversation while eating brunch that was served in UCE 3247's room. Following the meal UCE 3247 and MONEA discussed the possibility of UCE 3247 purchasing the 43 karat diamond and an estate in Southington, Ohio. MONEA explained the history and the quality of the diamond owned by MONEA's trust. MONEA explained that he had the ability to provide UCE 3247 additional diamonds in the future and he and UCE 3124 were hoping to establish a relationship with UCE 3247 that included continuing business. MONEA explained he could sell the diamond and the UCE 3247 explained, "How bout the cash, because you was telling me you wanted transfers. That cost me money. I've got to pay people to be able to transfer the money. I got people that charge me four points, five points. What can you do with that? Can you help me with that?" MONEA asked, "They charge you five points to move the cash?" MONEA continued, "I told John that with Homeland Security Act. You know what that is? Homeland Security Act. They examine all wire transfers that come through here. They want to make sure it's not coming from terrorist organizations. So I have to assume. I met with my attorney and he said 'Paul' he says 'I'm saying there is a possibility not a probability but a possibility that this money

10

is going to be looked at.' Is that a problem?" UCE 3247 stated, "That's going to be a problem for me." MONEA explained that his attorney advised that if the diamond is sold for fair market value and one doesn't have a responsibility to find out about the origin of the money. MONEA stated that taking cash is difficult but advised that he is willing to pay UCE 3247 the "five points". UCE 3247 explained that it would take awhile to move the money into transfers. UCE 3247 advised, "I will have to go back to Miami to see how quickly my men can handle that." (moving of the money) MONEA agreed to split the cost of moving the money into accounts to transfer. UCE 3247 again urged MONEA to take the cash and advised "I have a house full of it (cash)" UCE 3247 advised that it would take 30-45 days to put the money in a position to be wire transferred. MONEA then agreed to sell the diamond and the estate in exchange for 19.5 million and a boat. UCE 3247 advised that UCE 3247 would have someone come to Ohio to view the diamond and the property.

15. On November 2, 2006, UCE 3124, UCE 3247, and PAUL MONEA met for dinner at the Prime Rib Loft at the Orleans Hotel and Casino. UCE 3124 was wearing a digital recorder which was operational during the meeting. Following dinner UCE 3124 and MONEA spoke in the parking lot of the Orleans. The two discussed UCE 3124's commission on the sale of the diamond and MONEA advised that he wanted $500,000 in "good faith" money wired from UCE 3247's people to his attorney's account for which MONEA

11

provided wiring instructions. The two then argued about where the money should be wired and the possibility of setting up an account controlled by both UCE 3124 and MONEA's attorney for purposes of security of the $500,000. MONEA expressed concern stating, "Do you want to be tied to the trust (MONEA's trust) on paper? Do I want the trust to be tied to you on paper, because it is that. Bank, FDIC those signatures, social security numbers are all recorded and they are in the computer forever." MONEA expressed further concern regarding a check from UCE 3124 to MONEA's attorney and being "at arm's length from the sale (sale of the diamond)." MONEA stated, "If anyone comes knocking on the door down the road, they are knocking on the attorney's door. A lot of it goes directly to the trust (UI). They'll knock on MICKEY's door." MONEA advised UCE 3124 to "lean on" UCE 3247 for the $500,000 and stated that he would talk to his attorney about setting up a new bank account. The two engaged in further conversation regarding the transaction before MONEA departed.

16. On November 6, 2006, UCE 3124 contacted PAUL MONEA on telephone number 330-495-3701. The conversation was recorded. UCE 3124 questioned MONEA regarding his meeting with MONEA's attorney during which they were to discuss the possibility of opening an account so that UCE 3247 could wire "good faith" money regarding the diamond purchase. MONEA stated, "My attorney said Paul I can guarantee you that if we go in the bank and open a new checking account with your friend's name on it and mine and we

12

wire five hundred thousand dollars to it the FBI is going to be all over that like stink on shit and I'm quoting him." MONEA then explained that his attorney advised that a "suspicious transaction" would be reported with a $500,000 deposit. MONEA and UCE 3124 then discussed the possibility of UCE 3247 wiring $100,000 into MONEA's attorney's trust account. UCE 3124 advised that it should not be a problem and the MONEA agreed to email UCE 3124 the wiring instructions.

17. On November 6, 2006, UCE 3124 telephoned MILLER at telephone number 330-904-3580. The conversation was recorded. MILLER advised that he was present during a meeting with MONEA and MONEA's attorney when they discussed the possible transaction with UCE 3247 and the diamond. UCE 3124 and MILLER discussed MONEA's request to wire money as "good faith". During conversation regarding the wire transfer for payment of the diamond MILLER stated, "I would not wire it all at one time. I would wire it over a few payments." MILLER advised that these monies would go to the attorney's office and advised, "These banks that handle these wire transfers they are under orders that if they see something unusual they are supposed to call the authorities and let's say they call the FBI and say, ok, we have a five hundred, we have a five million dollar wire in." MILLER continued, "The FBI calls the attorney and says what the hell is with this...and the attorney says, he who has been in business seventy five years says this is a legitimate deal." MILLER

13

added, "Now when it gets wired from the attorney to the trust the money has already cleared." UCE 3124 informed MILLER that UCE 3247 offered cash and MILLER stated, "Yeah, but you can't do that." UCE 3124 advised that he was willing to pay more if MONEA would take cash because "he has a lot of cash." MILLER replied, "Yeah, I know. It would be a tough thing (accepting cash). A bank wire is one hundred percent legitimate." Later in the conversation MILLER laughed about UCE 3124 making a million dollars in commission off of three days work. MILLER advised that he couldn't make that amount in five years. UCE 3124 asked, "You want to make that much? I can help." MILLER stated, "Yeah" and UCE 3124 laughed. MILLER replied, "I gotta do it this way buddy." UCE 3124 and MILLER then discussed MICKEY MILLER CHEVROLET and MONEA. MILLER advised that he controls the checkbook for MONEA's trust account and when discussing the diamond deal stated, "The money that is being wired in, according to Paul's (MONEA) attorney, if the money is being wired in where it came from (origin of the money) is none of our freakin' business." The two continue to engage in conversation regarding the possible transaction and agree to speak at a later date.

18. On November 7, 2006, UCE 3124 retrieved an email from PAUL MONEA with instructions for wiring money to MONEA's attorney's account. The email advised that the money should be wired to Amer-Cunningham Co. LPA-IOLTA, account number XXXX196, ABA XXXXXX124, National City Bank, Akron, Ohio.

19. On November 7, 2006, UCE 3124 contacted PAUL MONEA on telephone number 330-495-3701. The conversation was recorded. UCE 3214 advised that UCE 3124 had received the wiring instructions and told MONEA that the money would be wired on Thursday (November 9, 2006). UCE 3124 advised that $50,000 was going to be wired on Thursday and $50,000 the following week.

20. On November 9, 2006, $50,000 was wired to the Amer-Cunningham Co. LPA-IOLTA, account number XXXX196, ABA XXXXXX124, National City Bank, Akron, Ohio.

21. On November 9, 2006, UCE 3124 contacted PAUL MONEA on telephone number 330-495-3701. The conversation was recorded. UCE 3124 advised MONEA that $50,000 had been wire transferred to an account provided to UCE 3124 by MONEA. MONEA inquired when the remaining $50,000 would be sent and UCE 3124 advised next week as "...soon as they can get it (cash) in and move it through the accounts." UCE 3124 and MONEA engaged in general conversation before the conversation was completed.

22. On November 13, 2006, UCE 3124 contacted PAUL MONEA via telephone number 330-495-3701. The conversation was recorded. UCE 3124 advised "They're gonna put more money in the account on Friday." MONEA asked if UCE 3124 was concerned about the passage of time and UCE 3124 stated, "He said it's gonna take uh...thirty to forty-five days to get that money the way he wanted it." The two say goodbye and the conversation ended.

23. On November 13, 2006, UCE 3124 contacted MICHAEL MILLER at telephone number 330-904-3580. The conversation was recorded. UCE 3124 and MILLER discussed the pending diamond transaction between UCE 3124's associates and MONEA. UCE 3124 advised, "The guy (UCE 3247) told us it takes thirty to forty-five days to move nineteen and a half million dollars." MILLER replied, "That's right." UCE 3124 stated, "You can't move nineteen and a half million dollars easily overnight." MILLER replied, "Not any more." UCE 3124 stated, "He (UCE 3247) gave Paul (MONEA) the time frame. He says and I gotta pay to do that. He's gotta pay five percent to do it. (move the money into a financial institution)" MILLER told UCE 3124 that MONEA better not push to hard or the deal might fall through. UCE 3124 informed, "He (MONEA) goes well do you think it's...it's uh..odd that it's taking this long of a time. I go, no, he (UCE 3247) told you. I said he...he offered you cash and you said no. I mean he offered it right away, cash, and you said no. So...you gotta wait." MILLER replied, "It takes a little time to wire that kind of money." UCE 3124 then explained that UCE 3124 needed $10,000 to clear up a debt and asked MILLER if he could deposit the money in UCE 3124's account. MILLER advised that UCE 3124 had several paychecks waiting for him and stated that maybe he could provide an advance to cover the rest. UCE 3124 stated, "I got to clear something up that I need a...a solid check for." UCE 3124 provided MILLER with his account number so MILLER could make the

16

deposit and the two engaged in general conversation before the call ended.

25. On November 13, 2006, your affiant obtained a list of residents living in a gated community known as Glenmoor in Jackson Township, Ohio. According to records provided by the security department and titled "Glenmoor Resident's Roster" MICKEY MILLER and NANCY MILLER reside at ███████████, Jackson Twp., Ohio.

26. On November 17, 2006, $45,000 was wired to the National City Bank, Akron, Ohio, ABA XXXXXX124, Account number XXXX1 96, Account name Ameri-Cunningham Co. LPA-IOLTA, per instructions of PAUL MONEA.

27. On November 20, 2006, $5,000 was wired to the National City Bank, Akron, Ohio, ABA XXXXXX124, Account number 4405196, Account name Amer-Cunningham Co. LPA-IOLTA, per instructions of PAUL MONEA.

28. On November 28, 2006, your affiant spoke with Larry Grimes of the United States Probation Office. Grimes advised that MONEA is on Federal supervised release. As condition of this release MONEA is required to supply an address where he is residing and if at any time MONEA should move his residence he has 72 hours to report the change of address. Grimes advised that upon his release from prison in November of 2005, MONEA supplied Grimes' office with an address of residence of ███ ███████, Alliance, Ohio. Grimes advised that officials from

17

his office were out to visit MONEA at ▇▇▇▇▇▇▇▇▇▇ in June of 2006.

## SUMMARY AND CONCLUSION

29. Based upon the facts and circumstances set forth above, Affiant has probable cause to believe, and does believe that MICHAEL MILLER, PAUL MONEA and others known and yet unknown, in the Northern District of Ohio, Eastern Division, the District of Nevada, and elsewhere have and continue to knowingly and intentionally combine, conspire, confederate, and agree together and with diverse other persons, both known and unknown, to knowingly and intentionally conduct and attempt to conduct a series of financial transactions affecting interstate commerce, which transactions involved the proceeds and/or represented proceeds of a specified unlawful activity; that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, possession of controlled substances with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 841, knowing that the transaction involved the proceeds of some form of unlawful, or represented as unlawful, activity; and knowing that the transactions were designed in whole or in part to conceal the nature, location, source, ownership or the control of the proceeds of said unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(I), and (a)(3);

18

all in violation of Title 18, United States Code, section 1956(h).

_____
Mark McMurtry
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 12 day of

December , 2006.

U.S. ~~DISTRICT COURT~~ JUDGE
MAGISTRATE

19