0001

```
1                 IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF OHIO
2                          EASTERN DIVISION
3
4    UNITED STATES OF AMERICA,         )
                                       )
5                        Plaintiff,    )
                                       )
6             vs.                      )    Criminal Action No.
                                       )      5:04cr00030
7    PAUL MONEA,                       )
                                       )
8                        Defendant.    )
9                             - - -
10      TRANSCRIPT OF CROSS EXAMINATION OF MARK McMURTRY
           HAD BEFORE THE HONORABLE JOHN R. ADAMS,
11            JUDGE OF SAID COURT, ON MONDAY,
               MAY 21, 2007 AT 8:45 A.M.
12                            - - -
13   APPEARANCES:
14   For the Government:      ROBERT E. BULFORD, ESQ.
                              Asst. U.S. Attorney
15                            US Courthouse, Suite 208
                              2 South Main St.
16                            Akron, OH  44308
17
     For the Defendant:       WILLIAM T. WHITAKER, JR., ESQ.
18                            Suite 301
                              190 North Union
19                            Akron, OH  44304
20                            ANDREA L. WHITAKER, ESQ.
                              Friedman & Gilbert
21                            1700 Standard Building
                              1370 Ontario St.
22                            Cleveland, OH  44113
23
     Court Reporter:          Richard G. DelMonico
24                            568 U.S. Courthouse
                              Two South Main Street
25                            Akron, Ohio  44308
```

0002

```
1                     CROSS EXAMINATION
2    BY MR. WHITAKER:
3    Q       Mr. McMurtry, you are the case agent in this case,
4    is that right?
5    A       That's correct.
6    Q       And in the course of your duties as the case
7    agent, you prepared an affidavit for Mr. Monea's arrest,
8    is that correct?
9    A       I did.
```

10   Q       I'm going to hand you, if I may approach, your
11   Honor., what's been marked as Defendant's Exhibit for the
12   purposes of identification only, 1059.
13               May I, your Honor?
14                   THE COURT:  You may.
15   Q       Is that an excerpt of your affidavit in support of
16   the search warrant?
17   A       It appears to be, yes.
18   Q       And you'll notice that paragraph 10 refers to
19   October 17th, isn't that correct?
20   A       That's correct.
21   Q       And you've listened to all of the tapes, is that
22   correct?
23   A       I have.
24   Q       All right.  Read the jury what you wrote under
25   oath.  When I say affidavit, that's something you swore
0003
 1   to under oath?
 2   A       I did.
 3   Q       Read the part that I've highlighted, if you would,
 4   please?
 5   A       "The three traveled to lunch during which Monea
 6   showed UCE 3124 what he represented to be a 43 carat
 7   diamond that Monea was attempting to sell.  Monea, who
 8   had spoken to UCE 3124 about the diamond during a
 9   previous meeting advised UCE 3124 that he would provide a
10   commission to UCE 3124 if UCE 3124 could find a buyer
11   for the diamond.  UCE 3214 advised that since the last
12   time UCE 3124 had seen Monea he had talked to a possible
13   buyer for the for the diamond."
14   Q       Having listened to some of the testimony here and
15   your own review of the tapes, you realize that's a
16   misleading paragraph, don't you?
17   A       Which section, sir?
18   Q       The part that suggests that the agent didn't say
19   anything about a buyer until after he was offered a
20   commission, for starters?
21   A       Which sentence are you referring to?
22   Q       Look at the juxtaposition of the sentence that
23   starts with, "Monea, who had spoke to UCE 3124"?
24   A       "Monea, who had spoke to UCE 3124 about the
25   diamond during a previous meeting, advised UCE 3124 that
0004
 1   he would provide a commission to UCE 3124 if UCE 3124
 2   could find a buyer for the diamond."
 3   Q       And you are aware of the fact, the truth of the
 4   matter, UCE 3124 had already said he had a buyer for the
 5   diamond, are you not?
 6   A       I believe he said early on that he had.  When it
 7   came up about they were talking about four million, there
 8   was a discussion about the provenance of the diamond.
 9   Mr. Monea or Mr. Miller brought up the price of $15

10  million.  UCE 3124 said he had talked to some people who
11  might be interested.  Later on there was discussion about
12  the amount of money that would be paid should the diamond
13  be sold through Mr. Rizzo.
14  Q      Agent McMurtry, the fact of the matter is that the
15  very first discussion of this diamond, or anything
16  related to the diamond, was when Agent Tanza said I have
17  a buyer for that thing of yours, isn't that correct?
18  A      Counselor, to quote, if you want me to answer that
19  directly to that quote, I would have to see the
20  transcript.  That is possible.
21  Q      That's a pretty significant packet, though?
22  A      Pardon me?
23  Q      That was the first time Agent Tanza had seen Mr.
24  Monea in months?
25  A      That's correct.
0005
 1  Q      In fact, Agent Tanza didn't even know Mr. Monea
 2  was going to be there that day?
 3  A      That is correct.
 4  Q      So it is a fairly significant fact that Agent
 5  Tanza, after not seeing Mr. Monea for months, would start
 6  the conversation by offering to sell the diamond.
 7  Wouldn't you think that's a significant fact?
 8  A      Counsel, I don't think they started the
 9  conversation by saying I have a buyer for the diamond.  I
10  don't think that was the beginning of the conversation.
11  Q      I'm sorry, I need to slow down and let you finish.
12  That was the beginning of the conversation about anything
13  to do with the diamond, isn't that correct?
14  A      If you want to produce the transcript I will
15  answer that hundred percent accurately.
16  Q      Handing you what we've marked as Defendant's
17  Exhibit 1043, the excerpts of the transcript.  I direct
18  your attention to --
19              MR. BULFORD:  I'm going to object to that
20       your Honor, that's an excerpt of the portion of the
21       transcript.  He asked for the transcript.
22              THE COURT:  All right.  Do we have a
23       complete copy of the transcript?  What day are you
24       referring to?
25              MR. WHITAKER:  We are referring to October
0006
 1       17th, your Honor, and it's Section C of the
 2       transcript.
 3              THE COURT:  Give him both copies, the copy
 4       of the excerpt the defendant has marked, give him
 5       the copy the government has prepared so that he has
 6       both before him.  I believe the government's exhibit
 7       may be a bit more extensive.
 8  BY MR. WHITAKER:
 9  Q      Now Agent McMurtry, do you see that?  As I recall
                           Page 3

```
10    from earlier in testimony --
11             I don't believe I have a question in front of
12    you right now?
13    A       I see it.
14    Q       You see the Exhibit C there, right?
15    A       I do.
16    Q       I want you to look at that and listen to the
17    transcript.  Listen to the tape recording that that is a
18    copy of.
19             Go ahead.
20                (At this point in the proceedings the
21             recording was played in open court.)
22    Q       Did you hear the very last sentence, "I may have a
23    buyer for that thing of yours"?
24    A       It didn't say that.  It says, "I want to talk to
25    you about something else that you have that I may have a
0007
 1    buyer for."
 2    Q       Now that's the first time there is any reference
 3    to the diamond whatsoever in the conversation between
 4    Agent Tanza, know as Rizzo, and Mr. Monea, isn't that
 5    correct?
 6    A       They are not talking about the diamond directly,
 7    but we can possibly infer that it may be the diamond.
 8    Q       Really?  Agent McMurtry, are you telling this jury
 9    up here under oath that you think that might not be the
10    diamond?
11    A       I did not say that.
12    Q       You said you are not sure it is the diamond?
13    A       No, I did not say that.
14    Q       You are not sure, in fact, that it is the diamond
15    that Agent Rizzo or Agent Tanza is talking about?
16    A       We can infer that he's talking about the diamond.
17    He does not state or say the diamond.
18    Q       But he is referring the to the diamond?
19    A       We can infer that, yes.
20    Q       And you can infer that because it is the only
21    thing he claimed to have a buyer for of Mr. Monea's that
22    day?
23    A       That day, correct.
24    Q       So going back to your affidavit.
25             Your affidavit that says, after there was a
0008
 1    discussion about the diamond and after he had been
 2    offered a million dollars to sell it, Agent Tanza said, I
 3    may have a buyer for it.
 4             You'll agree that's misleading, wouldn't you?
 5    A       That's not correct, counselor.
 6             The same statement says, "Monea, who had spoke
 7    to UCE 3124 about the diamond during a previous meeting,
 8    advised UCE 3124 that he would provide a commission to
 9    UCE 3124 if he could find a buyer for the diamond."
                            Page 4
```

```
10              Had they already spoken about buying the
11  diamond?  Yes.
12  Q      Tell me when you've read all the transcripts,
13  point out to this jury one time where Mr. Monea said
14  anything whatsoever to Agent Tanza about buying that
15  diamond or selling that diamond.  Any of the transcripts
16  that you listened to prior to October 17th.
17              MR. BULFORD:  Objection.
18              THE COURT:  Basis of your objection?
19              MR. BULFORD:  I'm objecting to this.
20              THE COURT:  Why don't we approach the side
21      bar.
22              (The following discussion was
23      conducted at the side bar, between court and
24      counsel, out of the hearing of the jurors, as
25      follows:)
0009
 1              THE COURT:  Basis of your objection?
 2              MR. BULFORD:  If I recall, first, I don't
 3      think it is relevant.  We are not in a suppression
 4      hearing.  This agent testified about the seizure of
 5      things on December 13th, and the fact that he seized
 6      a hundred thousand dollars through a court order.
 7      This affidavit is laid out in such a way that he
 8      hasn't testified about any of this stuff.  And now
 9      he's bringing it out an affidavit for a seizure
10      warrant and arrest warrant.
11              THE COURT:  Are you suggesting he should
12      be recalled on cross examination in the defendant's
13      case, none of this has to do with your direct?
14              MR. BULFORD:  No, no, it doesn't.  None of
15      it does.
16              THE COURT:  None of it's related to the
17      direct at all?
18              MR. BULFORD:  That's right.
19              THE COURT:  So you are objecting to the
20      order of proof, essentially?
21              MR. BULFORD:  Yes.
22              THE COURT:  You want to be heard?
23              MR. WHITAKER:  Yes, I do, your Honor.
24              I think it goes directly to his
25      credibility.  It's always an issue on cross or
0010
 1      direct.  He said he testified that the reason he's
 2      here is he is the case agent that he handled all of
 3      the evidence.  And so I think this goes directly to
 4      his credibility.
 5              THE COURT:  Well, I'll allow the
 6      questioning.  Although I, again, I believe it is
 7      somewhat out of turn, none of this relates to
 8      direct.  But you are going to, if you are going to
 9      quote from the affidavit when you are cross
```

```
10        examining him you are going to quote it accurately
11        and completely.  A couple times here you've referred
12        to here, i.e. a million dollar commission.  It's not
13        referenced in the affidavit, no way shape or form.
14        So if you are going to quote from it it is going to
15        be exact and accurate.
16                    MR. WHITAKER:  Okay.
17                    THE COURT:  I'll allow it, but if you are
18        going to ask him such questions as can you point me
19        anywhere in the transcripts, if he needs time we'll
20        take a break and I'll adjourn to let him look at the
21        transcripts.  So if you are going to ask him those
22        kind of broad questions, you point me to anywhere in
23        the transcripts, I know he is the case agent, there
24        is a lot of transcripts here, a lot of evidence,
25        I'll give him a break to look at it.
0011
1                    MR. WHITAKER:  Your Honor, I'll do that.
2         But he knows this is the first mention.  But if he
3         wants to take the time, fine.
4                (The following proceedings were
5            conducted in open court.)
6                    THE COURT:  All right.  You may resume
7         your inquiry.
8                    MR. WHITAKER:  Could you read the question
9         back?
10               (The following question was read by the
11           reporter.)
12                   THE REPORTER:  "Question:  Tell me when
13        you've read all the transcripts, point out to this
14        jury one time where Mr. Monea said anything
15        whatsoever to Agent Tanza about buying that diamond
16        or selling that diamond.  Any of the transcripts
17        that you listened to prior to October 17th."
18 BY MR. WHITAKER:
19 Q        Can you answer that question?
20 A        No.
21 Q        You are aware of the fact there isn't a single
22 conversation between Agent Tanza and Mr. Monea about
23 where Mr. Monea asked Agent Tanza to sell that diamond or
24 do anything whatsoever with that diamond, are you not?
25 A        Is there any conversation?  Or before the 17th?
0012
1 Q        Any conversation before October 17th where Mr.
2 Monea asked Mr. Tanza to sell that diamond or find a
3 buyer for that diamond?
4 A        That is correct.
5 Q        There is none?
6 A        Correct.
7 Q        So the first time there is any mention of Mr.
8 Tanza finding a buyer for that diamond is when he raises
9 it in that meeting saying I may have a buyer for
                            Page 6
```

10    something that you have?
11    A      Correct.
12    Q      And you saw the 302 of Agent Tanza as well for
13    that October 17th meeting?
14    A      I saw it.
15    Q      And that 302, which we marked earlier as I think
16    Exhibit 1058, Defense Exhibit 1058, uses the same order
17    of things where he talks about being offered the
18    commission if he can find a buyer, and then says, I may
19    be able to find a buyer.  Do you recall that?
20    A      The same order as which?
21    Q      As your affidavit?
22    A      Sir, if you are asking me about my affidavit, the
23    statement that I've read continually in this courtroom is
24    the correct statement.  An affidavit is a probable cause
25    document, it does not require, as it states in the
0013
 1    affidavit, that all the evidence in the case would be
 2    provided in the affidavit, but only enough evidence to
 3    see that probable cause does exist.
 4    Q      Okay.
 5    A      Can I finish?
 6    Q      Sure?
 7    A      The statement says "Monea, who had spoke to UCE
 8    3124 about the diamond during a previous meeting, advised
 9    UCE 3124 that he would provide a commission to UCE 3124
10    if UCE 3124 could find a buyer for the diamond."
11            That is an accurate statement.
12    Q      It is not, in part, in the sense that Agent Tanza
13    had already said I have a buyer for something that you
14    have, correct?
15    A      As I said, an affidavit is a probable cause
16    document, does not require that all the evidence in the
17    case be written out in the affidavit.
18    Q      I understand.  We are only talking about the
19    evidence that he did write out in the affidavit?
20    A      That's correct.
21    Q      And he did write out that he offered him the
22    commission prior to writing out that -- that UCE advised
23    that since the last time he had talked to someone who
24    might be interested in buying it, correct?
25            You are the one that put that order in there?
0014
 1    A      That is the order of the statements, yes.  It does
 2    not infer that anything other than what it states in the
 3    document.
 4    Q      And that's consistent with Agent Tanza's 302.
 5            Would you like to take a look at that?
 6    A      Certainly.
 7                    MR. BULFORD:  Objection.
 8                    THE COURT:  Sustained.  Counsel, you
 9           cannot use the statement of the other agent to
                        Page 7

10          either impeach or refresh the witness's testimony,
11          please.
12     Q          No mention of the Tyson house in that October 17th
13     meeting either, is there?
14     A          In the affidavit, is that what you are asking?
15     Q          At the whole meeting, there is no -- no, we are
16     done with affidavit.
17     A          Okay.
18     Q          There was no mention of the Tyson house during the
19     course of that meeting, am I correct?
20     A          I believe you are correct.
21     Q          And some time after that Agent Tanza comes to Mr.
22     Monea and says, hey, I think they might want to buy the
23     Tyson house as well, correct?
24     A          They did have -- discussions, I believe, were
25     initiated by Mr. Tanza regarding the purchase of the
0015
 1     Tyson house.
 2     Q          In fact, somebody had come up with the idea to
 3     throw the Tyson house into the package of the sale of the
 4     diamond, right?  Between either you and Tanza, or
 5     somebody involved in the operation there, somebody came
 6     up with the idea to throw the Tyson house in, right?
 7     A          Right.  To throw it in or mention it could be a
 8     possibility.
 9     Q          To make it a part of the sale?
10     A          Yes.
11     Q          Who came up with that idea?
12     A          I'm not sure.  I'm sure Mr. Rizzo -- Mr. Tanza had
13     discussion about Mr. Monea.
14     Q          The purpose of that was so the government could
15     then take the Tyson house as well as the diamond?
16                    MR. BULFORD:  Objection.
17                    THE COURT:  Sustained as to the --
18          sustained.
19     BY MR. WHITAKER:
20     Q          Well, you'll certainly acknowledge that before
21     that discussion between you and Rizzo about making the
22     Tyson house a part of the deal Mr. Monea had never
23     suggested it.  You'll agree with that, won't you?
24     A          As far as selling the Tyson house?
25     Q          Yes, exactly?
0016
 1     A          That's correct.
 2     Q          And you've listened to the October 25th tape when
 3     that was raised, correct?
 4     A          I have.
 5     Q          And you compared it with -- well, I don't know
 6     that you had a transcript, but you listened to it.  I
 7     want you to listen to this and tell me?
 8     A          Can you tell me where it is in the book, sir?
 9     Q          It's not in the book.  I want you to listen to it
                                Page 8

10   and tell me, based on your review of the transcript, that
11   this is an accurate recording of the raising of the issue
12   of the Tyson house.
13                 THE COURT:  Excuse me.  Before you play
14        it, do we know what date the conversation occurred?
15                 MR. WHITAKER:  October 25th.
16                 THE COURT:  So your representation is it
17        occurred October 25th?
18                 MR. WHITAKER:  That's correct.
19                 THE COURT:  Thank you.
20             (At this point in the proceedings the
21        recording was played in open court.)
22   BY MR. WHITAKER:
23   Q      Is that an accurate recording of the first time
24   the Tyson house was mentioned in terms of the sale of the
25   diamond and then the Tyson house?
0017
 1   A      I don't know if that's the first time it was
 2   mentioned, counselor.  That's an accurate depiction of a
 3   time when it was mentioned.  It sounds like it would be
 4   the first time from the expressions used in that
 5   conversation.
 6   Q      Now, you testified in the Grand Jury on this
 7   matter?
 8   A      I have.
 9   Q      And you've made some 302s yourself?
10   A      I have.
11   Q      And based on that information, you were aware,
12   were you not, that Agent Tanza had only been to the
13   Wadsworth dealership on two occasions prior to October
14   17th?
15   A      When you said been there, do you mean physically
16   entered the dealership?
17   Q      Go to the dealership, yes?
18   A      I know he had been in the area prior to that,
19   driving by the dealership with Mr. Miller.  To the best
20   of my recollection, yes, that's probably the second or
21   third time he had been at the dealership.
22   Q      And you heard him say that he had been there every
23   other week and never seen Mr. Monea there, am I correct
24   on his testimony?
25   A      There were, I believe, some trips there subsequent
0018
 1   to the October 17th trip when Mr. Monea was not present
 2   there.
 3   Q      But he was talking specifically about the 17th
 4   when he said that, wasn't he?
 5   A      I believe he said that he had made multiple trips
 6   to Mr. Miller's dealership in Wadsworth, and that was the
 7   only time Mr. Monea had been present.
 8             There were trips to the Wadsworth dealership
 9   prior to the October 17th meeting, and trips to the
                          Page 9

10  dealership subsequent to the October 17th meeting, not
11  only by Mr. Tanza but other undercover officers.
12  Q     We are just talking about Mr. Tanza right now.
13  Then you'll agree he had only been there two times prior
14  to the October 17th meeting?
15  A     To the best of my recollection.
16  Q     I want you to look at both Section E of the
17  November 15 consideration of the defense transcripts and
18  26-B, page 3, of the Government's Exhibits.
19              THE COURT:  Ladies and gentlemen of the
20        jury, you can refer to those items at this time,
21        please, those portions of the transcript.  Once
22        again, the audio recordings themselves are the
23        evidence, not the transcripts.
24              26-B.  Is there a page?
25              MR. WHITAKER:  Yes, page 3, your Honor.
0019
 1              THE COURT:  Of Government's 26-B, and the
 2        Defendant's Exhibit D.  I'm sorry, it's E, in the
 3        defendant's folder, please.  This is the November
 4        1st, 2006 consideration.
 5              MR. WHITAKER:  November 15th, your Honor.
 6              THE COURT:  November 15th.
 7              MR. WHITAKER:  Did you find it?
 8              THE COURT:  Yes, I have both of them
 9        before me.
10  BY MR. WHITAKER:
11  Q     I want you to look at it and listen to the actual
12  recording of it.
13  A     which one are we playing, November 1st or November
14  15th?
15  Q     November 15th?
16  A     Okay.
17              (At this point in the proceedings the
18        recording was played in open court.)
19  Q     You saw those, you heard those three lines, right?
20  A     Yes.
21  Q     And it's Agent Tanza that says "no kidding",
22  right?
23  A     It sounds that way, yes.
24  Q     That part isn't included in your transcription of
25  that conversation, is it?
0020
 1  A     Correct.
 2              MR. WHITAKER:  Nothing further.  Your
 3        Honor, if I might have one second.
 4              THE COURT:  All right.  You can close your
 5        folders, ladies and gentlemen, both the Government's
 6        and the defendants, please.
 7              MR. WHITAKER:  Nothing further.
 8              THE COURT:  All right, sir.
 9              Just one moment, please.  Any redirect of
                        Page 10

10        the witness, please?
11                    MR. BULFORD:  No, your Honor.
12                    THE COURT:  I'm sorry?
13                    MR. BULFORD:  No, your Honor.
14                    THE COURT:  All right, sir, you may step
15        down.
16                              - - -
17                    C E R T I F I C A T E
18        I, Richard G. Delmonico, Official Court Reporter
          in and for the United States District Court, for the
19     Northern District of Ohio, Eastern Division, do hereby
       certify that the foregoing is a true and correct
20     transcript of the proceedings herein.
21
                             _____
22                            Richard G. DelMonico
                              Official Court Reporter
23                            568 U.S. Courthouse
                              Two South Main Street
24                            Akron, Ohio  44308
                              330-252-6021.
25