# IN THE U.S. DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | CASE NO. 07 CR 0030 |
| Plaintiff | |
| v. | JUDGE JOHN ADAMS |
| **PAUL MONEA** | **JOINT POST-HEARING BRIEF OF THE MONEA FAMILY TRUST I - 1999, BROOKE MONEA AND BLAKE MONEA** |
| Defendant | |

**I.  Statement of Facts**

In 1999, Deborah Douglass settled the Monea Family Trust I – 1999 in favor of Paul Monea, Blake Monea, and Brooke Monea as beneficiaries. (Trust Exhibit 1). John Tuggle was appointed the first Trustee of the Trust. (Trust Exhibit 1). Under the terms of the Trust, the Trustee was granted the normal powers of a Trustee, including the power to hold, manage, and sell property. (Trust Exhibit 1, Article Six, pp.22-27). The Trust does not grant any beneficiary the power to bind the Trust to any transaction. (Trust Exhibit 1).

Paul Monea or a majority of then-living beneficiaries was granted the power to remove and appoint the Trustee. (Trust Exhibit 1, Article Three, pp.10-11). In the summer of 2005, Paul Monea was released from prison on an unrelated matter, and approached Attorney Jack Morrison, Jr., for representation. (Trial, Testimony of Jack Morrison, May 21, 2007, at pp. 687-688). When Paul Monea was released from prison, he learned that Tuggle had been self-dealing with Trust assets. (Trial, Testimony of

Jack Morrison, May 21, 2007, at pp. 687-688).  Tuggle was removed as Trustee by Paul Monea in November of 2005.  (Forfeiture Proceeding, Testimony of John Tuggle, October 21, 2008, at pp. 385-386).  Thereafter, the Trust sued Tuggle for self-dealing with hundreds of thousands of dollars of Trust funds.  (Forfeiture Proceeding, Testimony of John Tuggle, October 21, 2008, at pp. 395)

Following the removal of John Tuggle as Trustee, Paul Monea exercised his appointment power and appointed a gentlemen named Dr. Mishrick as the Trustee, but Dr. Mishrick died unexpectedly shortly thereafter.  (Trial, Testimony of Jack Morrison, May 21, 2007, at pp. 689-690).  Paul Monea then approached Mickey Miller to request him to act as Trustee of the Trust.  (Forfeiture Proceeding, Testimony of Mickey Miller, October 21, 2008, at pp. 408-409).  As part of Mickey Miller's conversations with Paul Monea on this topic, Paul Monea indicated that the Diamond at issue in this litigation was an asset of the Trust.  (Forfeiture Proceeding, Testimony of Mickey Miller, October 21, 2008, at pp. 408-409).  Blake Monea testified that it was always his understanding that the Diamond was a Trust asset.  (Forfeiture Proceeding, Testimony of Blake Monea, October 20, 2008, at pp. 59-60).  Jack Morrison, Jr. testified that he understood that the Diamond was an asset of the Monea Family Trust.  (Trial, Testimony of Jack Morrison, May 21, 2007, at p. 689)

After Mickey Miller was appointed Trustee, Miller introduced Paul Monea to FBI agent John Tanza.  Paul Monea and Tanza met for the first time on March 30, 2006, and they discussed the prospect of Tanza putting money into real estate owned by the Trust (the Tyson Estate) or in West Coast Customs, a car customization shop which Paul Monea had an affiliation with.  (Government's Trial Exhibit 5).  Paul Monea and

Tanza met again on May 19, 2006, and Monea described the Diamond to Tanza, but indicated that he had buyers for the Diamond. (Government's Trial Exhibit 9; Forfeiture Proceeding, Testimony of John Tanza, October 20, 2008, at p. 111). Paul Monea did not offer the Diamond to Tanza on May 19, 2006, and didn't ask him for money for the Diamond. (Forfeiture Proceeding, Testimony of John Tanza, October 20, 2008, at p. 123).

In the summer of 2006, Paul Monea made an effort to redeem the Diamond, which was being held by Michael Dillard in Oklahoma as collateral for a loan. Paul Monea induced Gerald Deleo to wire Michael Dillard's company $500,000. (Forfeiture Proceeding, Testimony of Gerald Deleo, October 21, 2008, at p. 350). On June 8, 2006, Mickey Miller appointed David Scott Ramsey agent of the Trust for purposes of picking up the Diamond from Mike Dillard in Oklahoma. (Trust Exhibit 3). The Diamond was picked up by Ramsey as an agent of the Trust on June 12, 2006. (Trust Exhibit 5).

On June 15, 2006, Tanza and Paul Monea discussed the Diamond and at that point in time, Paul Monea did not ask Tanza to sell it and he did not ask Tanza to find a buyer. (Forfeiture Proceeding, Testimony of John Tanza, October 20, 2008, at p. 122).

In August and September of 2006, Paul Monea had discussions with Reverend David Moore regarding a transaction involving a lake house in Massillon. As a result of those discussions, a meeting took place on September 2, 2006, at Glenmoor Country Club, attended by a number of people, including Paul Monea, Reverend David Moore, John Regan, Haili Moore-Murphy, Scott David Ramsey, and Mickey Miller, for a time. At that meeting, Paul Monea and Miller represented that the Diamond was a Trust asset. (Forfeiture Proceeding, Testimony of Haili Moore-Murphy, October 20, 2008, at

3

pp. 99-101; Testimony of Reverend David Moore, October 20, 2008, at p. 180). John Regan drafted documents which purported to grant an interest in the Diamond to the Church. (Forfeiture Proceeding, Testimony of Reverend David Moore, October 20, 2008, at p. 221). These documents, Church Exhibits 7 and 8, were not executed by the Trustee of the Trust, but rather by a beneficiary, Paul Monea, and an agent, Scott Ramsey.

In October of 2006, Miller, as Trustee, hired brokers to attempt to sell the Diamond on behalf of the Trust. (Trust Exhibits 6, 7). Jack Morrison, Jr., testified that Paul Monea told him that he had several people assisting him in trying to sell the diamond. (Trial, Testimony of Jack Morrison, May 21, 2007, at p. 691)

On October 17, 2006, Tanza asked Paul Monea whether the Diamond was still for sale. (Government's Trial Exhibit 12). They had not discussed the Diamond since May 19, 2006. (Forfeiture Proceeding, Testimony of John Tanza, October 20, 2008, at pp. 116-117). During this conversation, which involved Mickey Miller, Paul Monea told Tanza that he was selling the Diamond on behalf of the Trust. (Forfeiture Proceeding, Testimony of John Tanza, October 20, 2008, at p. 113). Miller told Tanza that he was the Trustee of the Trust, and vouched for the genuineness of the Diamond. (Forfeiture Proceeding, Testimony of John Tanza, October 20, 2008, at p. 113) Miller also told Tanza that the Diamond was owned by the Trust and that any money from the sale of the Diamond was going to go into the Trust. (Forfeiture Proceeding, Testimony of John Tanza, October 20, 2008, at p. 114)

Attempts to sell the Diamond continued in November, and Jack Morrison, Jr., issued a letter confirming that the Diamond was owned by the Trust and that Paul

4

Monea was acting as an agent of the Trust to negotiate a sale of the Diamond. (Trust Exhibit 8). At some point, Paul Monea, Miller and Tanza negotiated an agreement to sell the Diamond to buyers procured by Tanza. The source of the funds to buy the Diamond is purported to be drug proceeds. Blake Monea had no knowledge that his father was selling the Diamond to purported drug dealers. (Forfeiture Proceeding, Testimony of Blake Monea, October 20, 2008, at p. 60).

Paul Monea never told Jack Morrison that the buyers of the Diamond were drug dealers. (Trial, Testimony of Jack Morrison, May 21, 2007, at p. 710). Paul reported to Morrison that he had found a buyer, and asked Morrison to prepare sales documents. (Trial, Testimony of Jack Morrison, May 21, 2007, at p. 691). The documents that were prepared by the attorneys reflected a sale of the Diamond by the Trust. (Trust Exhibit 10). Morrison understood that part of the payment for the Diamond was going to be in the form of a boat that would go to Mr. Monea's Trust. (Trial, Testimony of Jack Morrison, May 21, 2007, at p. 693) The Trust's attorneys were preparing to report the sale of the Diamond on behalf of the Trust and prepare a Trust tax return. (Trial, Testimony of Jack Morrison, May 21, 2007, at p. 704)

The contemplated sale did not take place, and the Government arrested Mickey Miller and Paul Monea, who were both convicted of participating in a money laundering transaction. The Court ordered a forfeiture of Paul Monea's interest in the Diamond.

Nancy McCann became close to Blake Monea while serving as his home school teacher. (Forfeiture Proceeding, Testimony of Nancy McCann, October 20, 2008, at p. 18). Blake Monea asked McCann to become the Trustee of the Trust, and she agreed. (Forfeiture Proceeding, Testimony of Nancy McCann, October 20, 2008, at p. 19).

Blake Monea appointed McCann as Trustee using the Power of Attorney he held for Paul Monea in February of 2008. (Forfeiture Proceeding, Testimony of Nancy McCann, October 20, 2008, at pp. 19, 23)

McCann has made herself aware of the business of the Monea Family Trust. (Forfeiture Proceeding, Testimony of Nancy McCann, October 20, 2008, at p. 19). Based upon her review of the Trust records, it is her belief that the Trust owned the Diamond. (Forfeiture Proceeding, Testimony of Nancy McCann, October 20, 2008, at p. 20). McCann does not ratify any of the criminal acts of the former Trustees. (Forfeiture Proceeding, Testimony of Nancy McCann, October 20, 2008, at p. 29). She does, however, ratify the Trust's filing of a petition seeking to establish an interest in the Diamond. (Forfeiture Proceeding, Testimony of Nancy McCann, October 20, 2008, at p. 24).

## II. Legal Standards

Pursuant to 21 U.S.C. § 853(n)(6), the Court may amend a preliminary order of forfeiture if it finds by a preponderance of the evidence that a petitioner: (1) has a legal interest which was vested in the petitioner rather than the defendant; (2) has a legal interest which is superior to that of the defendant at the time of the events giving rise to forfeiture; or (3) is a bona fide purchaser for value of the property subject to forfeiture. U.S. v. Farley, 919 F.Supp. 276, 278 (S.D.Ohio,1996). Within the statutory forfeiture framework, the Court is directed to protect the interests of innocent parties. 21 U.S.C. § 853(i)(1). The law of Ohio determines the competing legal interests of the claimants. United States v. Ben-Hur, 20 F.3d 313, 317 (7th Cir.1994)

### III. Law and Argument

#### A. The Government's interest attached to the Diamond on October 17, 2006 at the earliest.

Under 21 U.S.C. § 853(c) the interest of the United States in forfeitable property "vests" "upon the commission of the act giving rise to the forfeiture." Here, the act giving rise to the forfeiture of the Diamond was the inclusion of the Diamond in the money laundering transaction. The Government argues that its interest attached on March 30, 2006 – the date when Miller introduced Paul Monea to Agent Tanza. But the evidence is clear that the Diamond did not become an object of the conspiracy until October 17, 2008.

In the recording of the first discussion between Miller and Tanza regarding Paul Monea – Government's Trial Exhibit 4 – from March 24, 2006, Miller and Tanza discuss Monea's plans for the Mike Tyson Estate and Monea's affiliation with West Coast Customs. When Paul Monea and Tanza meet on March 30, 2006, they discuss the prospect of Tanza putting money into the Tyson Estate or in West Coast Customs, and Tanza had not yet disclosed that he is working on behalf of drug dealers. Government's Trial Exhibit 5. During the May 19, 2006 meeting between Tanza and Paul Monea, Monea describes the Diamond, but indicates that he has buyers for the Diamond. Government's Trial Exhibit 9. That May 19, 2006 conversation is also the first time that Tanza discloses that he represents drug dealers. Government's Trial Exhibit 9. On October 17, 2006, Paul Monea and Tanza have the first substantive conversation regarding selling the Diamond to Tanza's South American contacts, when Tanza asks Paul Monea "you said that Diamond's for sale?" Government's Trial Exhibit 12.

The "commission of the act giving rise to the forfeiture" occurred on October 17, 2006, when Paul Monea went ahead and planned a sale of the Diamond with Tanza, while believing that Tanza was proposing a purchase of the Diamond using drug money. Prior to October 17, 2006, a sale of the Diamond was not contemplated. Prior to May 19, 2006, drug money was not at issue. Accordingly, the Government's argument that the "act giving rise to the forfeiture" occurred on March 30, 2006 is misplaced. All that happened on March 30, 2006 was that Miller introduced Paul Monea to Tanza. It is not illegal to introduce two people. The illegal act occurred on October 17, 2006, when Monea discussed selling the Diamond to Tanza's buyer, knowing that drug money was involved.

### B. The interest of the Trust and its Beneficiaries attached to the Diamond prior to the Government's interest.

The Diamond was an asset of the Trust. Mickey Miller testified that he was asked by Paul Monea to serve as the Trustee of the Trust in the fall of 2005, and as a part of that conversation, Paul Monea told Miller that the Diamond was an asset of the Trust. (Forfeiture Proceeding, Testimony of Mickey Miller, October 21, 2008, at pp. 408-409). Blake Monea testified that it has always been his understanding that Diamond was a Trust asset. (Forfeiture Proceeding, Testimony of Blake Monea, October 20, 2008, at pp. 59-60). Paul Monea represented that the Diamond was a Trust asset to Gerald Deleo, Reverend Moore, Haili Moore-Murphy, Jack Morrison, Jr. and John Tanza. (Trial, Testimony of Jack Morrison, May 21, 2007, at p. 689; Forfeiture Proceeding, Testimony of Haili Moore-Murphy, October 20, 2008, at pp. 99-101; Testimony of Reverend David Moore, October 20, 2008, at p. 180, Testimony of Gerald Deleo, October 21, 2008, at p. 353, Testimony of John Tanza, October 20, 2008, at p.

8

113). Even FBI Agent Mark McMurtry testified that his understanding, based upon his review of the documents at issue in the case, was that the Diamond was owned by the Monea Family Trust. (Trial, Testimony of Mark McMurtry, May 23, 2007, at p. 1041)

In addition to the testimony, it is clear from documentary evidence that the Trust was treating the Diamond as an asset. David Scott Ramsey was appointed agent of the Trust on June 8, 2006 for purposes of picking up the Diamond from Mike Dillard in Oklahoma. (Trust Exhibit 3). The Diamond was picked up by Ramsey as an agent of the Trust on June 12, 2006. (Trust Exhibit 5). In October of 2006, Miller, as Trustee, hired brokers to attempt to sell the Diamond on behalf of the Trust. (Trust Exhibits 6, 7). In November of 2006, Jack Morrison, Jr. attorney for the Trust, issued a letter confirming that the Diamond was owned by the Trust and that Paul Monea was acting as an agent of the Trust to negotiate a sale of the Diamond. (Trust Exhibit 8). The documents that were prepared by attorneys for the Trust at the time of the sale to Tanza's buyers reflected a sale of the Diamond by the Trust. (Trust Exhibit 10).

There is no competing evidence, from any source, which suggests that title to the Diamond was held by any person or entity other than the Trust at all times relevant to this matter.

The Government argued in its Motion to Dismiss that there is no evidence that Paul Monea actually made a gift of the Diamond to the Trust, because there was no evidence that he relinquished dominion and control over the Diamond, sufficient to constitute a delivery to the Trust. However, even if such a delivery did not occur before, it certainly occurred in June of 2006, when Miller appointed Ramsey agent of the Trust to accept delivery of the Diamond. (Trust Exhibit 3). For purposes of completing a gift,

delivery to a donee may be completed through an agent of the donee. Streeper v. Myers (1937), 132 Ohio St. 322, syl 2. There is no dispute that Ramsey picked up the Diamond from Michael Dillard in Oklahoma on June 12, 2006. (Trust Exhibit 5). At that point, Ramsey, an appointed agent of the Trust, had exclusive dominion and control over the Diamond. Accordingly, even if there was some question as to whether a complete gift of the Diamond was made by Paul Monea to the Trust prior to June 12, 2006, it is clear that delivery to the Trust took place at least by that date, if not before. As a result, the Diamond was an asset of the Trust at all times relevant to this matter.

### C. The illegal conduct of Michael Miller and Paul Monea does not bind the Trust.

A fiduciary cannot bind an estate when the fiduciary acts outside the scope of his or her authority. See Dunlap v Robinson (1861), 12 Ohio St 530; Westfall v Dungan (1863), 14 Ohio St 276; Deschler v Franklin (1900), 20 Ohio CC 56, 11 Ohio CD 188. Here, the Trustee and one of the beneficiaries of the Trust engaged in an illegal transaction with Trust property. The Trust does not authorize the Trustee to engage in illegal activity with Trust assets. (Trust Exhibit 1, Article Six, pp. 22-27). Accordingly, the Trust is not bound by Miller's malfeasance, and its interest in the Diamond should be upheld.

The Government argues that Paul Monea exerted so much influence over the Trustees, John Tuggle and Miller, that the Trust was a sham. But there is evidence that Miller and Tuggle exercised control over the Trust. Paul Monea proposed a list of payments to be made by the Trust when the Diamond was sold. But Miller pointed out to Paul Monea that Monea forgot to account for taxation and Miller told Monea that "[t]here's no way that we're going to distribute any money until the taxes are taken care

of." (Forfeiture Proceeding, Testimony of Mickey Miller, October 21, 2008, at p. 429). Accordingly, Miller did exercise some judgment in connection with his role as Trustee. Similarly, while Tuggle claimed that he exercised no control over the Trust, he still had to sign all of the checks for money coming out of the Trust, and he could choose to not pay something by refusing to sign the check. (Forfeiture Proceeding, Testimony of John Tuggle, October 21, 2008, at pp. 393-394). While Tuggle may have failed at many of his duties as Trustee, he still had to put pen to paper to authorize the trust activities. As a result, the Trust did have independent existence, and the Trust's interest in the Diamond should be preserved.

> **D.** **If the Trust fails due to the illegal acts of Miller and Paul Monea, then a constructive or resulting trust arises in the Diamond for the benefit of Blake and Brooke Monea.**

Even if the Court concludes that Paul Monea did control Miller, that is a failing of Miller, not of Blake or Brooke Monea. Under the terms of the Trust, the Trustee was obligated to protect the interests of all of the beneficiaries, not just Paul Monea. (Trust Exhibit 1). There is no provision of the Trust which permits the Trustee to surrender his or her judgment to Paul Monea. (Trust Exhibit 1). To the extent that the Trustee of this Trust preferred Paul Monea to the exclusion of Brooke or Blake Monea, that is a breach of the Trust and is not binding upon these beneficiaries.

The beneficial interest of Brooke and Blake Monea in Trust assets should be protected. The beneficiaries of a Trust are not bound by the illegal acts of its Trustee. 90A Corpus.Juris.Secundum, <u>Trusts</u> § 319; <u>In re Jaques' Will,</u> 73 N.Y.S.2d 118, 121 (N.Y.Sur.1947). A beneficiary of an express trust has standing to bring a petition under 21 U.S.C. § 853(n) in order to protect his or her beneficial interest in a trust asset. <u>U.S.

v. Santoro 866 F.2d 1538, 1544 -1545 (4th Cir., 1989). An innocent beneficiary of an express trust should not have his or her beneficial interest forfeited under 21 U.S.C. § 853 due to the Trustee's malfeasance. Santoro, supra, U.S. v. Marx, 844 F.2d 1303, 1306 -1308 (7th Cir., 1988); U.S. v. Ferlaino, 1991 WL 17810, *5 (E.D.Pa.,1991) (unreported).

There is no evidence that Brook or Blake Monea had any role in the illegal conduct. Accordingly, they cannot be bound by Miller's unlawful act. Even if the Trust fails due to the illegal acts of Miller and/or any other beneficiaries, a constructive or resulting trust arises in the property to the extent of Brooke and Blake's beneficial interest. Marx, supra, 91 Ohio Jur. 3d Trusts § 214; 5 Scott on Trusts § 461. Therefore, while Paul Monea's beneficial interest in the Trust assets may be forfeit due to his complicity in Miller's illegal behavior, Brooke and Blake's beneficial interests should be preserved. Since Brooke, Blake, and Paul were each equal beneficiaries, Brooke and Blake should be entitled to 1/3 of the Trust assets each, in the event that the Trust fails.

**E. The claims of the Trust and its beneficiaries are superior to the claims of the other parties.**

**1. Jeri Coppa-Knudson**

Petitioner Jeri Coppa-Knudson did not appear at the Forfeiture Proceeding, and the Court orally granted a Fed.R.Civ.P. 41(b) dismissal of her petition. (Forfeiture Proceeding, October 20, 2008, at p. 5). These petitioners request an entry journalizing that dismissal so it is clear upon the record.

**2. Reverend David Moore**

Reverend David Moore is asserting a claim of quantum meruit, under the theory that he increased the value of the Diamond through his marketing efforts. It is

questionable whether or not such a claim can be presented in this forum – this is a proceeding to determine who has a legal interest in the Diamond itself. It appears that the essence of Reverend Moore's claim is that he conferred services for which he was not paid. Such a claim would not ripen into an interest in the Diamond without some sort of lien. Reverend Moore has not identified a legal basis for a lien attaching in this context. Accordingly, it appears that his claim of an interest is misplaced.

Even assuming that such a claim can be adjudicated in this forum, Reverend Moore has not met his evidentiary burden. Under Ohio law, a claim of quantum meruit has the same elements as a claim for unjust enrichment. Coyne v. Hodge Const., Inc., Medina App. No. 03CA0061-M, 2004 -Ohio- 727, ¶5 citing Loyer v. Loyer (Aug. 16, 1996), 6th Dist. No. H-95-068; U.S. Health Practices, Inc. v. Blake (Mar. 22, 2001), 10th Dist. No. 00AP-1002. Those elements include (1) that the claimant conferred a benefit; (2) that the recipient knew of the benefit; (3) and that the recipient retained the benefit given under circumstances where it would be unjust for him to retain it without payment. Coyne, supra at ¶5, citing Apostolos Group, Inc. v. Josephson, 9th Dist. No. 20733, 2002-Ohio-753, at ¶ 6-10, Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183. A party seeking quantum meruit recovery for services rendered "must introduce evidence as to the reasonable value of the services rendered." Gioffre v. Simakis (1991), 72 Ohio App.3d 424, 428.

Reverend Moore did not offer any evidence as to the reasonable value of the services he claims to have rendered. There was no testimony as to the number of hours he spent researching the Diamond, or the value of his time. He was also unable

to quantify any increase in value to the Diamond.  Accordingly, he did not meet his burden of proof in this matter.  As a result, his petition should be dismissed.

### 3. The Fellowship of Truth Church

The Fellowship of Truth Church claims to have acquired an interest in the Diamond by way of a gift of 50% interest made in September of 2006.  At the time, the Diamond was a Trust asset, having been gifted to the Trust by June of 2006, at the latest.  The documents which the Church relies upon, Church Exhibits 7 and 8, were not executed by the Trustee of the Trust, but rather by a beneficiary, Paul Monea, and an agent, Scott Ramsey.  However, the Trustee, Mickey Miller, clearly testified that Ramsey's agency was limited to picking up the Diamond on behalf of the Trust in Oklahoma, as contemplated in Trust Exhibit 3.  Miller signed no other documents appointing Scott Ramsey as an agent for the Trust.  (Forfeiture Proceeding, Testimony of Mickey Miller, October 21, 2008, at p. 435).  Mickey Miller never gave Ramsey the authority to give half the Diamond to the Fellowship of Truth Church.  (Forfeiture Proceeding, Testimony of Mickey Miller, October 21, 2008, at pp. 424-425).  Miller never gave Ramsey the authority to enter into a hybrid type sales contract between Reverend Moore's church and Mr. Lanci and the Trust.  (Forfeiture Proceeding, Testimony of Mickey Miller, October 21, 2008, at p. 425).

The documents relied upon by the Church are not executed by the Trustee of the Trust.  Ramsey's agency on behalf of the Trust did not extend to gifting or encumbering the Diamond in any way.  Paul Monea, as a beneficiary of the Trust, did not have the power to gift the Diamond.  Accordingly, the Church's claim of an interest in the Diamond must fail.

At the conclusion of the forfeiture proceeding, the Church moved to amend its petition to conform to the evidence. Presumably, the Church will argue that it was defrauded by Paul Monea, and it will ask that its reliance damages be recovered from a sale of the Diamond. However, this is a proceeding to adjudicate ownership interest in a Diamond, not a civil case against Paul Monea. Paul Monea's actions as a beneficiary of the Trust could not convey an interest in the Diamond to the Church. Accordingly, the Church has no interest in the Diamond.

### 4. Gerald Deleo

Similarly, Gerald Deleo presents a claim based largely upon the conduct of Paul Monea, who induced Deleo to expend $500,000 to get the Diamond released from Michael Dillard's possession. Deleo's testimony indicated that by paying this money, he believed that he was entering some sort of amorphous partnership with Paul Monea. (Forfeiture Proceeding, Testimony of Gerald Deleo, October 21, 2008, at p. 350). He was never promised any particular percentage ownership of the Diamond. (Forfeiture Proceeding, Testimony of Gerald Deleo, October 21, 2008, at p. 350). In fact, the transaction appears to have been more in the nature of a personal loan to Paul Monea. In Government's Exhibit 4, a May 10, 2007 letter from Jeannine Stewart, one of Deleo's attorneys, to the U.S. Attorney's office, Deleo's attorney admitted:

> Mr. Deleo was induced by Mr. Monea to get the diamond "out of hock." Mr. Deleo was told that if he were to get the diamond out of hock [for $500,000.00], Mr. Monea would sell the diamond within 60 days and my client [Deleo] would receive an additional $100,000.00 for doing so.

This does not appear to be a purchase of an interest in the Diamond. Instead, it appears to be a loan to Paul Monea which will be paid back with $100,000 in interest within 60 days.

Further, Paul Monea did not have the power to sell the Diamond to Deleo without the transaction being approved by the Trustee of the Trust.  As a beneficiary of the Trust, he could not bind the Trust unless the Trustee ratified the sale, and there is no evidence that the Trustee did so.  In his deposition, under questioning by the Government, Deleo admitted that Paul Monea told him that the Diamond was owned by his family's Trust.  (Forfeiture Proceeding, Testimony of Gerald Deleo, October 21, 2008, at p. 353).  As such, if he was truly buying the Diamond from the Trust, he should have insisted upon the involvement of the Trustee.

Ultimately, a loan that is not secured by a mortgage, lien or other security device does not grant one an "interest" in the subject property under 21 U.S.C. 853(n).  See U.S. v. Nnaji, 2005 WL 1049905, *1 (E.D.Mich.,2005) (unreported) (loans made for improvement of real property did not constitute interest in property in the absence of a recorded lien).  As a result, Deleo's claim should be denied.

**IV.     Conclusion**

Paul Monea and Mickey Miller have been convicted of money laundering, and their interests in the Diamond are forfeit.  However, the Trust by law has an independent existence, and its interest in the Diamond cannot be affected by the illegal acts of the Trustee and one of the three beneficiaries.    Under no circumstances can the two innocent beneficiaries – Brooke and Blake Monea – be defeased of their beneficial interests due to illegal acts that they did not ratify or participate in.  As a result, this Court should grant the petitions filed by the Trust and Brooke and Blake Monea, and deny the petitions filed by the other parties herein.

Respectfully Submitted:

***AMER CUNNINGHAM CO., L.P.A.***

 /s/Tom Houlihan
Jack Morrison, Jr. (#0014939)
Thomas R. Houlihan (#0070067)
159 South Main Street
1100 Key Building
Akron, OH 44308-1322
(330) 762-2411
Fax (330) 762-9918
***Counsel for Monea Family Trust I – 1999,
Brooke Monea, and Blake Monea***

## CERTIFICATE OF SERVICE

THIS CERTIFIES THAT a copy of the foregoing was electronically served upon all parties participating in the U.S. District Court's ECF system, this 5 day of December, 2008.

 /s/Tom Houlihan
Counsel for Monea Family Trust I – 1999,
Brooke Monea, and Blake Monea

12681 post-hearing brief