UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MONEA, | ) | CASE NO.  5:07CR30 |
| | ) | 5:11CV2108 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Respondent. | ) | |
| | ) | |

The instant matter is before the Court upon Petitioner Paul Monea's Amended Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255.  Doc. 386.  The petition is DENIED.

## I. STANDARD OF REVIEW

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."  *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).  A federal district court may grant relief to a prisoner in custody only if the petitioner can "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

## II. LAW AND ARGUMENT

### GROUNDS ONE THROUGH FIVE

In his first five grounds for relief, Monea contends that he was deprived of effective assistance of counsel.  Monea contends that his counsel was ineffective for 1) failing to investigate and present evidence that the Government's agents tampered with an audio recording, 2) failing to

present evidence in support of a coercion or duress defense, 3) failing to properly investigate or present evidence of an advice of counsel defense, 4) failing to properly represent Monea at sentencing, and 5) failing to move for dismissal of two of the three counts of money laundering.

The standard for ineffective assistance of counsel is the two-part test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, Monea must show that his counsel's performance was deficient.  Id. at 687.  Counsel must not merely have erred, but erred so "serious[ly] that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment."  *Id*.  Second, Monea must show that his counsel's deficient performance actually prejudiced his defense.  *Id.*  The Court will now examine each of Monea's contentions.

A bulk of Monea's amended petition focuses upon his claim that his counsel failed to properly investigate whether the Government's agents tampered with an audio recording.  Monea's claim lacks merit for several reasons.

First and foremost, the claim lacks merit based on prior conclusions reached by both this Court and the Sixth Circuit.  The issue that Monea claims was not properly investigated prior to his trial was presented to the Court.  In fact, the Court held an evidentiary hearing on the issue, accepted testimony, and reviewed later-filed expert reports on the issue.  The Court resolved the issue when it denied Monea's motion for a new trial.  In so doing, this Court noted as follows:

> Defendant has produced testimony and averments that this "anomaly" occurs in only one of the multiple conversations recorded. Defendant has also failed to present evidence as to what he believes occurred during that time. Although he has suggested that a threat was made by the Government's agent, he has produced no evidence to substantiate this claim even though there was at least one other witness to the conversation, namely Scott Ramsey. The recording reflects no change in the flow of the conversation after the "click" that would indicate that a portion of it had been removed or that the tone of the conversation had altered greatly through the duration of the "click." Furthermore, the conversation that occurred after the "anomaly" demonstrates that the Defendant was a willing participant in the conspiracy[.]

Doc. 227 at 24.  The Sixth Circuit affirmed this Court's conclusion stating:

> In any event, the district court offered an additional reason for concluding that it did not require further defense evidence concerning the anomaly. The court found that Monea's enthusiasm to engage in the transaction (in conversation after the "anomaly") demonstrated that, on the whole, he was a willing participant, rather than one who was coerced by recent threats. We conclude the district court did not abuse its discretion.

Doc. 360 at 31.

As such, Monea has now repackaged his prior argument regarding the alleged alteration. Monea now claims that had his attorney properly investigated the alleged anomaly on the audio recording before trial, it would have been shown that an alteration had occurred. Thereafter, according to Monea's argument, the Government could not have placed an agent on the witness stand that would perjure himself. As such, Monea claims, his trial would have been dramatically different.

Monea's claim, however, suffers from the same prior flaw. The evidence before this Court did not then, and does not now, support the conclusion that the Government or its agents altered any video recording. Instead, the record reflects 1) that the wearer of the recording device did not have the ability to turn the device on and off, 2) that the chain of custody of the recording was intact, and 3) that it would involve a multi-department conspiracy within the FBI to accomplish the unlawful editing suggested by Monea. As such, the record does not offer any support for a claim of prejudice related to any alleged failure to investigate the anomaly on the audio recording.

Further, the record does not contain evidence of deficient performance by counsel on this issue. In response to the petition, the Government provided an affidavit from defense counsel, William Whitaker. Whitaker indicated that Monea raised the claim that threats had been made and edited from the audio recordings relatively early on in their relationship. Whitaker was skeptical of the claim, but he still chose to investigate the issue. Doc. 398-1 at 2. Thereafter, Michael Robertson was retained to review the tapes. According to Whitaker, Robertson informed him of an anomaly

3

on the audio recordings on May 14, 2007. Whitaker informed Robertson that the matter could not be presented to the Court without a qualified audio expert. By the time Robertson was able to locate anyone that would agree with his belief regarding the anomaly, it was the day of closing arguments. Whitaker used that information and presented it to the Court through affidavits on May 22, 2007, the same day as closing arguments.

It is somewhat unclear what Monea claims was deficient about Whitaker's conduct. The record reflects that Robertson was hired early on in the matter as a private investigator and to review the audio tapes. Nothing in the record contradicts Whitaker's claim that he was first notified of the anomaly on May 14, 2007. Moreover, the Court finds that Whitaker was not only prudent, but professionally responsible when he informed Robertson that he could not make an allegation that the FBI deliberately tampered with evidence without a qualified expert. As such, the Court finds nothing deficient in Whitaker's pursuit of the issue regarding the alleged anomaly.

Monea's proposal – that Whitaker could have investigated the anomaly sooner – is unsupported by any facts. First, there is the issue before this Court that there has never been any evidence to demonstrate that the tapes were edited by the Government. As such, Monea's repeated claims that this fact would have been discovered sooner with effective counsel are unfounded. Second, Monea does not propose in what manner Whitaker, or any counsel for that matter, could have discovered this anomaly sooner and utilized it in a more successful manner. Rather, Monea states in a conclusory fashion that effective counsel would have 1) discovered the anomaly sooner, 2) hired better experts, and 3) ultimately persuaded the Court that the tapes were deliberated edited. However, those better experts have not been presented to the Court to date through this petition. Moreover, there is no evidence before this Court to suggest that those experts exist. Further, the Court would once again note that Monea eventually presented the Court with expert reports on the issue of the anomaly and the Court found that he had not satisfied his burden to demonstrate that the

4

tapes had been edited. As such, even if Whitaker had somehow become aware of the anomaly at a date before trial, nothing would have changed. Monea's experts were duly considered, their ultimate opinions were rejected, and this Court's ruling was upheld on appeal. Accordingly, Monea's first claim of ineffective assistance of trial counsel fails.

Monea next claims that Whitaker was ineffective for not properly pursuing a coercion or duress defense. Monea contends that had Whitaker presented evidence of the alleged threats made against him by the Government agents, such a defense would have been viable. The Court finds no merit in this contention.

> The Sixth Circuit has previously discussed a duress defense and noted as follows:
>
> To state a prima facie case of duress, a defendant must offer some evidence in support of each of the following five elements:(1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;(2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;(3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;(5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005). Monea's claim of deficient conduct focuses exclusively on a failure to present evidence on the first element of a duress defense. In so doing, Monea ignores that his duress claim was properly not pursued because it could not possibly be successful. As noted above, to succeed, Monea would need to provide evidence that he had no reasonable, legal alternative to violating the law and avoiding the harm. Monea could not offer such evidence in the face of the undisputed facts. Even assuming that Monea was threatened, he had ample opportunity to refuse to violate the law. In fact, Monea's attorney at the time, Jack Morrison, testified that had Monea given him all of the details surrounding the sale at issue, Morrison would have advised Monea to immediately go to the authorities. Instead, nearly five

weeks passed between the final alleged threat on November 2, 2006 and Monea's voluntary dinner meeting on December 13, 2006. As such, Monea had ample opportunity to avoid the criminal act.

Furthermore, the Court rejects Monea's contentions that he could not avoid the threatened harm because he did not know the scope of the agent's "people" that would be out to harm him. The record reflects that Monea actively consulted with counsel about the proposed deal and spent weeks with an opportunity to approach law enforcement. Instead of approaching law enforcement, the audio tapes reflect "Monea's enthusiasm to engage in the transaction (in conversation after the "anomaly") demonstrat[ing] that, on the whole, he was a willing participant, rather than one who was coerced by recent threats." Doc. 366 at 31 (6th Cir. opinion). As Monea could not have established a coercion or duress defense under the facts presented to the Court, it follows that he cannot demonstrate ineffective assistance of counsel for failing to properly pursue such a defense.

Monea next asserts that his counsel was ineffective in the manner in which he pursued an advice of counsel defense. Monea's argument here also suffers from numerous flaws. First, a very brief review of the facts surrounding this claim is necessary for context. Monea attempted to arrange the sale of the diamond at issue by consulting with Attorney Jack Morrison. In fact, Morrison prepared paperwork necessary for the transaction and the transaction was scheduled to occur in his office. With that background, Monea contends that he held a viable advice of counsel defense.

The prima facie elements of an advice-of-counsel defense are (1) full disclosure of all pertinent facts and (2) good faith reliance on the advice of counsel. *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir.1994) (citing *United States v. Duncan*, 850 F.2d 1104, 1116 (6th Cir.1988)). Thus, to rely on an advice-of-counsel defense, Monea would have had to establish that he fully disclosed all pertinent facts to attorney Morrison and that he acted in good faith reliance on their advice that his actions were not objectionable. Morrison's testimony unequivocally demonstrated that Monea

6

had not disclosed all the pertinent facts to Morrison.  Morrison asserted that Monea had never told him that the undercover agent represented drug dealers.  As such, Morrison's testimony derailed any advice of counsel defense.

Monea claims that Morrison's testimony was the result of ineffective assistance of counsel.  Specifically, Monea asserts that any reasonable investigation by defense counsel would have revealed that Morrison would not support such a defense.  In so arguing, Monea ignores several crucial facts.  First, it is undisputed that Monea told his counsel that he provided Morrison with all of the pertinent facts, including informing Morrison that the undercover agent represented drug dealers.  As such, Monea's own representations lessened the need to examine Morrison prior to his testimony.  Second, Morrison prepared numerous legal documents to effectuate the transfer, providing documentary evidence in support of a claim of advice of counsel.  Accordingly, there was a basis for calling Morrison as a witness.

Assuming arguendo that Monea could establish that counsel was deficient for failing to interview Morrison in a more detailed manner prior to his testimony, he still cannot prove prejudice from that deficient performance.  If counsel had interviewed Morrison and declined to put him on the stand, Monea could not have established an advice of counsel defense.  Monea attempts to avoid this result by claiming that counsel was also deficient for not advising him to testify after Morrison gave his statements.  However, Monea cannot have it both ways.  Under Monea's arguments, if his counsel was effective, Morrison would never have been called as a witness, thereby negating the advice of counsel defense.

Following through with Monea's theory – that Morrison ambushed his counsel with his testimony – does not alter the result herein.  Assuming that counsel effectively interviewed Morrison, counsel would have been left with the alternative of placing Monea on the stand.  At that point, Monea, a convicted felon, would have offered testimony in direct conflict with his prior

7

attorney.  Thus, to succeed in this petition, Monea would need to demonstrate that a jury would have likely believed his testimony rather than that of his prior attorney.  Nothing in the record supports this conclusion.

Finally, Monea offers the conclusion that his counsel should have withdrawn and become a witness in the matter in order to offer the alleged prior inconsistent statements of Morrison.  In the alternative, Monea suggests that his counsel should have more aggressively cross-examined Morrison regarding these alleged inconsistencies.  Whitaker's affidavit makes it clear that he did not believe that Morrison had given prior inconsistent statements.  While such a statement may support an argument that Whitaker performed an inadequate interview of Morrison, as noted above, Monea cannot demonstrate any prejudice that flows from this alleged deficient performance.  As such, this claim of ineffectiveness also fails.[1]

Next, Monea contends that Whitaker was ineffective during sentencing.  Monea contends that this Court would have considered a less severe sanction had Whitaker effectively fallen on his sword during sentencing.  In other words, Monea claims that Whitaker should have stood up during his sentencing and taken full blame for any and all arguments and delays associated with the audio recordings and the alleged tampering.  Monea contends that such an altruistic gesture by Whitaker would have led to a different sentence in this matter.  Once again, Monea's claims fall well short of meeting the *Strickland* standard.

First and foremost, Whitaker did not present on the sentencing issues herein.  Instead, Monea retained and utilized the services of Attorney Carmen Hernandez. While Whitaker appeared and proffered testimony that would have been presented, he did not engage the Court in any manner regarding sentencing.  As such, it was Monea's choice to engage new counsel at sentencing that

---

[1] There does exist a third alternative under these facts – that Whitaker place Monea on the stand without ever calling Morrison.  Of course, this would have undoubtedly led to the Government calling Morrison and creating the same record as currently exists with respect to his testimony.

8

precluded any reasonable opportunity for Whitaker to effectively take the blame for every decision in the matter. That fact alone eliminates Monea's ability to raise an ineffective assistance of counsel claim against Whitaker with respect to sentencing when Whitaker was not sentencing counsel.

Monea's claim also relies upon a faulty foundation. Monea believes that had his counsel stood up and attempted to shoulder the entirety of the responsibility for the manner in which the defense was presented, Monea would have been absolved of all that conduct. Such is not the case. There can be no dispute that Monea actively contributed to his defense. Decisions with respect to whether to pursue the allegations of altering the audio recordings and present the affidavit of Scott Ramsey were required to be approved by Monea. As such, no statement made by Whitaker or any other counsel would have absolved Monea from his role in the theories pursued by the defense.

More importantly, such a gesture by Whitaker would not have altered the Court's sentence. Even if Whitaker had taken full blame for the presentation of the defenses and arguments and the timing of the same, the Court was still left with a defendant who had not fully accepted responsibility for his actions and who had willfully engaged in criminal behavior while on supervised release. Whitaker's failure to attempt to deflect blame upon himself was not deficient conduct, nor did it prejudice Monea.

In his final argument regarding ineffective assistance of counsel, Monea claims that his counsel should have moved to dismiss two of the three money laundering counts. Specifically, Monea claims that he requested a $100,000 deposit. Monea asserts that because he only requested this one payment, the evidence supported only a singular conviction. However, the record reflects that Monea was informed of the need for multiple wire transfers and approved of all three transfers. Accordingly, his contention that he only formed the intent on a singular occasion is belied by the record. His final argument regarding ineffective assistance of counsel lacks merit.

9

**GROUND SIX**

In his sixth ground for relief, Monea claims that the undercover agent committed perjury. In support, Monea offers his own declaration and that of Ramsey which conflict with the agent's testimony regarding Monea frisking him prior to the November 2 car ride. In addition, Monea offers the declaration of Nancy McCann who claims to have overheard the agent tell a co-worker that he deliberately structured the $100,000 deposit in a manner to ensure that three separate counts of money laundering resulted. The agent offered an affidavit herein expressly denying having ever made the statement that McCann claims to have overheard. Additionally, the record contains numerous taped recordings involving the agent, Monea, and co-defendant Michael Miller. Those recordings corroborate the agent's testimony that the $100,000 deposit was paid in three installments because the money first had to be obtained from Miller. As such, the record does not support a claim of perjured testimony with respect to this issue. Further, Monea's self-serving declaration and that of an unindicted co-conspirator in Ramsey are insufficient to support a claim that the Government presented perjured testimony. Monea's sixth ground for relief also lacks merit.

**GROUND SEVEN**

In his final ground for relief, Monea claims that the Government engaged in prosecutorial misconduct. Specifically, Monea contends that the Government intimidated Ramsey into exercising his Fifth Amendment right against self-incrimination. In essence, Monea contends that the Government interfered with his ability to call Ramsey as a witness by virtue of informing Ramsey that he was subject to an ongoing investigation and could be indicted as a co-conspirator for the same crimes as Monea. However, similar facts have been discussed by the Sixth Circuit. The defendant in *United States v. Posey*, claimed that the prosecution engaged in misconduct when it

informed a witness that he was under investigation for the set of facts for which he was about to testify. The witness then declined to testify. The Sixth Circuit found no misconduct and noted:

> The Government has no obligation to pursue every prosecution that it commences, nor to charge every suspect that it investigates, or intends to charge. There is no proved cause for criticism of the actions of the Government in regard to these two witnesses. From the record before us, and the circumstances of the witnesses and parties, we certainly are unable to suspect or conclude that the Government was guilty of any dubious tactics.

*United States v. Posey*, 501 F.2d 998, 1001–02 (6th Cir. 1974). Not only does the same logic apply herein, but the Court also has the affidavit of Assistant United States Attorney Robert Bulford. In his affidavit, AUSA Bulford details his interactions with Ramsey. AUSA Bulford described that during his first encounters with Ramsey that he found him to be less than candid. As a result, AUSA Bulford sent Ramsey's counsel a letter informing him that he would not utilize Ramsey as a witness and that Ramsey remained the target of an ongoing investigation. Additional documentary evidence from an August 16, 2010 letter evidences AUSA Bulford's belief that Ramsey was a co-conspirator and that he was still subject to indictment.

As such, while Monea attempts to portray the contacts with Ramsey as some form of intimidation, the record reflects nothing other than an ongoing investigation and an assistant United States Attorney that kept the target of that investigation apprised of its status and his options with respect to cooperation. In fact, that investigation culminated in November 2011 when AUSA Bulford authored a 28-page memorandum that requested permission to charge Ramsey, Monea, and a third party with mail and wire fraud and to include Ramsey in the pending charges against Monea. Ultimately, AUSA Bulford was given authority to proceed against only Ramsey and declined to do so. Nothing in those facts suggests any improper or undue influence was exerted on Ramsey. Accordingly, Monea's final claim for relief lacks merit.

**III. CONCLUSION**

For the foregoing reasons, Petitioner Paul Monea's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is hereby **DENIED.**

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Dated: July 26, 2016                              /**s**/ *John R. Adams*
                                                  **JOHN R. ADAMS**
                                                  **UNITED STATES DISTRICT JUDGE**